IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STEVEN COLBERT**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0847-L |
| | § | |
| **INFINITY BROADCASTING** | § | |
| **CORPORATION d.b.a. KRLD**, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Partial Summary Judgment, filed August 5, 2005.

After careful consideration of the motion, response, briefs, appendices, reply, and applicable law,

the court **grants in part** and **denies in part** Defendant's Motion for Partial Summary Judgment.

### I.  Procedural and Factual Background

Plaintiff Steven Colbert ("Plaintiff" or "Colbert") filed this action on April 21, 2004, against

Defendant Infinity Broadcasting Corporation doing business as KRLD ("Defendant," "KRLD," or

"Infinity").  Colbert amended his complaint on May 18, 2004.  He contends that Infinity violated

the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay him overtime for work

he performed during this employment;[1] that Infinity discriminated against him based on his race in

violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e

*et seq.*; and that Infinity discriminated against him because of his race in violation of 42 U.S.C. §

1981 ("§ 1981") *et seq.*  Under both Title VII and § 1981, Colbert contends that Infinity denied him

---

[1]Infinity does not seek summary judgment on Colbert's FLSA claim.  Accordingly, the court does not address this claim.

**Memorandum Opinion and Order - Page 1**

promotional opportunities and terminated him because of his race.  Infinity denies that it
discriminated against Colbert because of his race, contends that Colbert never applied for a
promotion, and contends that Colbert was terminated for poor performance, a legitimate,
nondiscriminatory reason.  Infinity also contends that none of its employment actions was based on
improperly motivated factors.  Finally, Infinity asserts a number of affirmative defenses, which the
court finds unnecessary to list or discuss at this time.

Infinity has filed a motion for partial summary judgment and contends that no genuine issue
of material fact exists with respect to any claim asserted by Colbert.  Infinity thus contends that it
is entitled to judgment as a matter of law.  Colbert, on the other hand, contends that he has set forth
evidence which raises a genuine issue of material fact as to discriminatory employment actions taken
by Infinity regarding promotional opportunities and termination, and which precludes the granting
of summary judgment.  He requests the court to deny the motion for partial summary judgment.

The court now sets forth the facts upon which it relies to resolve the summary judgment
motion.  In setting forth the facts, the court applies the summary judgment standard as set forth in
the following section.  Only a few of the material facts are undisputed.  Accordingly, to put the
issues in proper context and understand the nature of the dispute between the parties, the court
includes evidence presented by both parties; of course, if Colbert sets forth competent evidence to
dispute, or that is contrary to, evidence presented by Infinity, the court, as it must at this stage,
accepts his version of any disputed material fact.

Colbert first began work at KRLD in April 2002.[2]  Brad Barton ("Barton"), Acting News

Director of KRLD, hired Colbert.  KRLD is an all-news format radio station located in Arlington,

Texas, and it serves the Dallas-Fort Worth broadcasting area.  Infinity terminated Colbert on or

about November 15, 2002.  Infinity hired Colbert primarily to anchor the overnight news updates

at the top of each hour and monitor scanners for breaking news.  Colbert states that editing news

stories was not his primary responsibility, but that he assisted in this task when time permitted.

Infinity, on the other hand, presents evidence that Colbert was hired in April 2002 "as a part-time

independent contractor 'anchor/editor' to work on an as-needed basis."  Infinity states that Colbert

was hired as he was because he had "limited broadcasting experience," and it wanted to assess the

strength of Colbert's skills before determining whether it should offer him a full-time permanent

position.  Colbert disagrees that he was ever told that his skills were being assessed.  Colbert,

however, does not deny or contest that he had limited broadcasting experience.

According to Infinity, Colbert's work performance and skills during his employment did not

meet its expectations; Colbert was warned or counseled on two separate occasions; Colbert's

performance did not in improve as a result of these warnings; and it terminated Colbert for continued

unsatisfactory performance, in particular for his failure to improve after the two warnings, his failure

---

[2]Infinity states that Colbert was hired as an independent contractor.  The record does not fully
establish whether this was in fact the case.  For example, the record mentions Colbert's employment, and his
being an independent contractor.  Two of the factors to determine whether a person is an independent
contractor are the level of control or supervision an organization has over the person performing the work and
whether there were time constraints placed on such person regarding this work.  Other helpful information
would be the manner in which Colbert was paid.  The court simply does not have sufficient information to
determine whether Colbert was an employee or independent contractor, although Colbert appears to
acknowledge that he was an independent contractor.  Plaintiff's Response to Defendant's Motion for
Summary Judgment at 18.  For purposes of the resolution of the motion, the court assumes that Colbert was
an employee.  The court notes that Infinity does not "concede" that Colbert is an employee; however, other
than making a passing reference to Colbert being hired as an independent contractor, it does not brief or
discuss the matter and the impact, if any, such designation would have on the court's power to decide
Plaintiff's claims of discrimination.

to edit and submit newscasts on November 12 and 14, 2002, and his failure to communicate with other editors at KRLD.

Colbert challenges and disagrees with Infinity's assessment of his performance.  Colbert declares that he was never "counseled or talked to" about poor performance or the lack of performance on his part.  He states that he was progressively given more hours and responsibilities without the commensurate pay and benefits.  He was also given a five-dollar per hour retroactive raise in November two weeks before his discharge.  With respect to his performance, Colbert states that when he asked Barton what he could do to improve his work, the only thing Barton told him was that he should "slow down" his delivery because sometimes he tended to talk a bit too fast.  In his declaration, Colbert also states that he informed Tyler Cox (News and Operations Director) and Janet Evans (Assistant News Director) during a meeting on October 31, 2002, that he was overloaded and needed help to do the additional work.  Rather than provide the additional assistance, Colbert's supervisors told him that the additional work must be done.  In short, Colbert declares that no meeting or conversation about the quality of his work or attitude ever took place between him and his supervisors.

## II.  Summary Judgment Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the

nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).  The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a

summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

#### A. Legal Standard for Plaintiff's Title VII and § 1981 Claims

Colbert brings his claims of race discrimination pursuant to Title VII and § 1981. Plaintiff's § 1981 claims are analyzed under the same evidentiary standard and same burden-shifting approach as cases brought pursuant to Title VII. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999).

To survive a motion for summary judgment, a plaintiff in a Title VII or §1981 discrimination case must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this *prima facie* case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination. *Id.*

The third step of the *McDonnell Douglas* test has been altered by the Supreme Court's decision in *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003) (holding that in Title VII cases, the mixed-motive theory of discrimination is available in cases with circumstantial evidence of discrimination). In light of *Desert Palace*, the Fifth Circuit has modified the final step of *McDonnell Douglas. See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004). In order to survive

summary judgment under the modified *McDonnell Douglas* test, at the final step, a plaintiff must offer sufficient evidence to create a genuine issue of fact that either: (1) a defendant's reason is not true, but is instead a pretext for discrimination or (2) a defendant's reason, though true, is only one of the reasons for its conduct and that another "motivating factor" is the plaintiff's protected characteristic. *Id. See also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005) (same).

After a Title VII or § 1981 case reaches the pretext stage, the question to be decided for the resolution of a motion for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law. *See Reeves*, 530 U.S. at 148; *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. On the other hand, in the context of an unlawful discrimination or retaliation claim, summary judgment is

inappropriate "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 373 n.23 (5th Cir.), *reh'g denied*, 232 F.3d 212 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001) (quoting *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)) (*en banc*).

### B.  Plaintiff's Failure to Promote Claims

Colbert states in conclusory fashion that "he was denied many opportunities for promotions, full-time employment, pay and other benefits."  Plaintiff's First Amended Complaint ¶¶ 8, 11.  In his complaint, Colbert identifies no specific promotion that he sought and was denied.

To present a *prima facie* case of race discrimination for denial of a promotion, an employee must show, or raise a genuine issue of material fact: "(1) that [he] is a member of [a] protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 388 F.3d 309, 317 (5th Cir. 2004) (citing *Celestine v. Petroleos de Venezuella SA* , 266 F.3d 343, 354-55 (5th Cir. 2001)); *see also Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000).

Plaintiff's failure to promote, or denial of promotion, claims leave much to be desired. Colbert makes only conclusory and nonspecific allegations in his complaint regarding the denial of promotions.  His summary judgment evidence fares no better.  In his summary judgment evidence, Colbert states that he "approached [his] supervisor(s) about his desire to be considered for full time status, pay and benefits."  Plaintiff's App. at 2.  He further includes a number of dates on which he

spoke with his supervisors.  *Id*.  Not one of the listed meetings even remotely mentions or discusses

a position for which Colbert applies.  Colbert's deposition testimony establishes that he did not even

recall or know whether a full-time anchor position was open or became available.  Defendant's App.

at 15.  Further, at the time of his deposition on November 18, 2004, Colbert could not recall whether

other positions became available while he worked at KRLD.  His exact response to a question

regarding this matter was, "I'm sure there were other positions.  I just can't recall at this time."  *Id.*

at 16.

 The summary judgment evidence offered by Infinity establishes that two full-time

reporter/editor positions became available at the time Colbert worked at KRLD from April 2002 to

November 2002.  The positions became available on May 1, 2002, and nine persons applied.

Colbert did not apply for either position.  A white male and a black male were selected to fill these

positions on June 5, 2002.  Defendant's App. at 38.  No other full-time positions became available

during the time Colbert worked at KRLD.  *Id*.  Further, during the time Colbert worked at KRLD,

no full-time anchor/editor position became available.  *Id*.  Colbert produces no competent evidence

to contradict the availability of positions at KRLD.  Indeed, he cannot even recall which positions

were available.

 Colbert appears to take the position that he did not know that he should have submitted an

application for any position in which he may have been interested.  The court can think of no reason

why Colbert would be exempt from submitting an application, unless KRLD had a custom or policy

of allowing individuals to apply verbally for open positions.  Had he submitted evidence that no

formal application process was in place, the court might have a different view on the matter.  Colbert

has submitted no evidence that KRLD accepted applications for open positions merely "by word of

mouth," or that KRLD treated him differently with respect to the application process for open positions. Absent such evidence, the court cannot accept Colbert's argument, which is essentially that he should be exempt from the formal application process because he "approached and spoke to several individuals about working in a full time capacity and getting full pay and benefits." Plaintiff's Appendix at 2. Simply put, "this dog will not hunt." The court finds it beyond comprehension that one could assert a claim for denial of a promotion and yet not even recall the specific position for which he applied.

Colbert has failed to establish that he applied for a position that was open at KRLD and, as he did not apply, he has failed to show that he was rejected. There can be no rejection unless one first applies for a position. As Colbert fails to satisfy the second and third elements necessary to establish a *prima facie* case for denial of a promotion, his claims fail as a matter of law. Accordingly, there is no genuine issue of material fact as to whether Colbert has established a *prima facie* case. Infinity is therefore entitled to summary judgment on Colbert's denial of promotion claims.

### C.  Plaintiff's Wrongful Termination Claims

The court now addresses Colbert's wrongful termination claims under Title VII and § 1981. To establish a *prima facie* case of race discrimination for wrongful termination, a plaintiff must show that he: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citing *Okoye v. University of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001)).

**Memorandum Opinion and Order - Page 10**

The court now discusses whether Colbert has established a *prima facie* case of race discrimination, or at least raised a genuine issue of material fact whether he was established such a case.  First, there is no doubt that Colbert, being black, is a member of a protected group.

Second, Colbert was qualified for the position from which he was discharged.  The court realizes that the parties disagree over this second element, but given the inherent subjectivity present regarding Colbert's performance and viewing the evidence in the light most favorable to Colbert, it determines that he has met this burden for purposes of summary judgment.  Colbert avers that the meetings regarding counseling never took place.  Infinity contends that Colbert never denied the underlying performance problems and that the statements in his declaration contradict his deposition testimony.  A fair reading of the summary judgment evidence does not support Infinity's position, which amounts to ineffectual hairsplitting.  It is clear that Colbert does not agree with his supervisor's assessment of his performance.  He has stated that he performed satisfactorily and was given a five-dollar per hour raise two weeks before his discharge.  Further, the record does not reveal a contradiction of testimony.  In his deposition, Colbert stated that he did not recall any meetings regarding counseling pertaining to his performance.  The questions in the deposition merely asked whether Colbert remembered or recalled certain meetings or counseling.  These questions called for "yes" or "no" answers, and Colbert answered accordingly.  If no meetings regarding counseling ever took place, as Colbert avers, it would be impossible for him to recall or remember such a meeting.  Considering this evidence as a whole, a reasonable jury, if it chose to believe Colbert, could find that he was qualified for the position from which he was discharged.

Third, Colbert suffered an adverse employment action, as he was terminated or discharged from employment.  "Adverse employment actions [are] ultimate employment decisions . . . such as hiring, granting leave, discharging, promoting, and compensating.  An employer's action does not rise to the level of an adverse employment action when it fails to have more that mere tangential effect on a possible future ultimate employment decision."  *Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (internal quotation marks, citations, and footnotes omitted).

Finally, Colbert satisfies the last prong.  He states that he was replaced by someone outside the group, CeCe Gonzales, who was not African-American.  Alternatively, he states that two white female employees, Susan Stephens and Susan Slupecki, who shared some of the same responsibilities as he did, were not fired for failing to pull and edit news stories.  Colbert submits evidence that he was treated differently from persons outside the protected group.  With respect to his failure to pull and edit newscasts on November 12 and 14, 2002, he states that two white females had as much obligation and responsibility to perform the same tasks for which he was discharged.  The two white females were not discharged.  Colbert has thus, at least, created a genuine issue of material fact regarding this prong.   Although Infinity argues that the incidents on the two days in question were not the only times that Colbert's performance was unsatisfactory, Colbert avers that he was never counseled or told that his performance was unsatisfactory or needed improvement.

For the reasons stated herein, the court determines that Colbert has met his burden regarding a *prima facie* case of race discrimination regarding his termination.  The court now turns to whether Infinity has articulated a legitimate, nondiscriminatory reason for discharging Colbert.

Infinity asserts that it terminated Colbert's employment because his job performance was unsatisfactory.  According to Infinity, it terminated Colbert because, despite prior warnings, his conduct and unsatisfactory job performance failed to improve.  It is without cavil that poor job performance is a legitimate, nondiscriminatory reason to discharge one from employment.  As Infinity has set forth a legitimate, nondiscriminatory reason for its decision to discharge Colbert, the court moves to the issue of pretext.

Colbert makes several arguments that he contends are evidence of intentional race discrimination.  The court, however, discusses only those for which an arguable basis might exist.  First, Colbert states that he was the only person classified or designated as an independent contractor who did not receive full-time classification and benefits.  Infinity produced evidence, which is not disputed by Colbert, that two other non-black or African-Americans were hired as independent contractors.  Accordingly, this argument does not carry the day for Colbert, and does nothing to establish pretext.

Second, Colbert contends that several racial statements attributed to various Infinity employees and supervisors foster or promote a racist work environment.  According to Colbert, the following statements were made within a month of his termination:

On November 14, 2002, "Jason," the board operator, told him: "They need you; you're black!"

On November 4, 2002, Susan Stephens told him, "Nothing racist, but black is your color!"

On October 17, 2002, Stephens, who was upset about an article listing best cities for
African-Americans responded to him, "Yeah . . . what if I said Arlington is the best
city for whites?"

On October 18, 2002, Mark Watkins, commenting about minorities on television,
said, "Did you see the size of that monkey?"

On October 21, 2002, Brad Barton commented on the cleaning staff and said,
"Maybe we're getting English-speaking janitors now!"

Workplace comments may constitute sufficient evidence of discrimination if the remarks are: "(1)
related to [the protected class of persons of which the plaintiff is a member]; (2) proximate in time
to the [complained-of adverse employment decision]; (3) made by an individual with authority over
the employment decision at issue; and (4) related to the employment decision at issue." *Rubinstein
v. Administrators of Tulane Educational Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (quoting *Brown
v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)); *see also Palasota v. Haggar Clothing Co.*, 342
F.3d 569, 578 (5th Cir. 2003), *cert. denied*, 540 U.S. 1184 (2004).  "Stray remarks with no
connection to an employment decision cannot create a fact issue regarding discriminatory intent and
are insufficient to defeat summary judgment." *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).

With respect to all of the statements attributed to persons at KRLD, except that attributed to
Barton, Colbert has failed to produce evidence that the individuals to whom these statements are
attributed were individuals with authority to make or influence the decision to terminate him.
Moreover, Colbert has not shown that any of these five statements was related to the decision to
terminate him.  Finally, assuming that Barton made the statement attributed to him, Colbert produces
no evidence from which one could reasonably infer that it relates to his protected group - African-

**Memorandum Opinion and Order - Page 14**

American.  The remarks attributed to personnel and supervisors at KRLD do not satisfy all of the elements of the stray remark test.  Accordingly, they do not constitute evidence of intentional race discrimination and do not assist Colbert in defeating summary judgment on this claim.

The final matter that Colbert contends shows evidence of intentional discrimination is a file in Barton's office labeled "Evolution File."  The evidence produced by Colbert indicates that the file only contains counseling statements on African-American employees.  Infinity does not deny the existence of the "Evolution File"; rather, it takes the position that the file fails to show any discriminatory animus against African-Americans.

The word "evolution," when used or applied solely to black persons, necessarily conjures up certain racial stereotypes, namely, that blacks are inferior to whites biologically and intellectually.  The court will not delve into the interplay between racism and evolution, but a modicum of research, or recollection from school days, reveals that Charles Darwin's theory of evolution promoted racism, in that he believed that whites were superior to blacks.  Indeed, as part of Darwin's theory, he believed, and many thought he had proved, that whites evolved from chimpanzees, which were considered the most intelligent of the apes; that Asians and brown-skinned persons developed from orangutans; and that blacks evolved from gorillas, which were the least intelligent and civilized, but the strongest and most brutal and savage of the apes.  Plain and simple, having a file labeled "Evolution File," which only contains information on black employees, could well be indicative of  animus toward members of that race.  Such conduct can be viewed as sending a message that African-Americans are not considered full and equal members of the workplace and must be dealt with separately on a different level.  The court does not know why the "Evolution File" existed, or if it in fact existed; however, at this stage, the court must accept that it did.  The

**Memorandum Opinion and Order - Page 15**

court cannot ignore the magnitude and gravity of the presence of such a file.  No one can seriously argue that a file labeled "Evolution File" in this context is not offensive and demeaning to African-Americans.  Perhaps, the evidence will establish to the trier of fact that no such file ever existed, or that the existence of such a file can be reasonably explained.  As Infinity concedes that Barton was arguably in a position to impact or influence the decision to terminate Colbert, the court believes that Colbert has presented enough evidence to show a discriminatory animus regarding his termination in November 2002.

For the reasons stated herein, the court determines that Colbert has produced sufficient evidence of pretext to avoid summary judgment on the race termination claim.[3]  As Colbert has raised a genuine issue of material fact regarding pretext, the issue of intentional discrimination must be decided by the jury.[4]

### IV.  Miscellaneous

#### A.  Motion to Strike

Infinity moves to strike certain court notes and memoranda submitted by Colbert in his response on grounds that such information constitutes inadmissible hearsay.  The court agrees that in the strictest sense, some of the information constitute hearsay.  Plaintiff, however, could have easily avoided any problems with hearsay by using the notes of events of which he once had personal knowledge to refresh his memory and set forth those facts in his declaration.  The court is

---

[3]Alternatively, the court determines that disputed issues of material fact remain concerning whether race was a motivating factor in the decision to terminate Colbert.  Accordingly, Colbert has also met his burden under the mixed-motives alternative.

[4]Infinity also raises the "after-acquired evidence" defense and the "same-actor inference" defense regarding Colbert's termination.  The court has legal and factual questions regarding both of these defenses, as neither is fully developed.  Accordingly, granting summary judgment on the termination claims would be inappropriate.

certain that Infinity will not contend that Evans and Barton, after almost three years, independently recalled all of the facts set forth in their respective affidavits.  At this stage, if the court were to exclude or strike the information submitted by Colbert, it would be exalting form over substance. If this case proceeds to trial, the parties are put on notice that the presentation and submission of evidence will be strictly enforced under the Federal Rules of Evidence.

The court also notes that some of the evidence to which Infinity objected was disregarded or not considered, as it did not meet the summary judgment standard previously adumbrated by the court.  Thus, objections to evidence that did not meet the standard are moot and should be overruled.

### B.  Mediation

On July 25, 2005, the court granted the parties an extension of time to mediate and ordered the parties to mediate by September 19, 2005.  Mediation was originally to occur on July 19, 2005. *See* Court's Order of January 2, 2005.  No mediation took place by September 19, 2005, which was the date requested by the parties.  The court has been informed that mediation is to take place on December 13, 2005.  If this case is not resolved at mediation, the court plans to proceed to trial on December 19, 2005.

### V.  <u>Conclusion</u>

For the reasons set forth herein, the court determines that Colbert has failed to establish a *prima facie* case on his denial of a promotion claims.  Infinity is therefore entitled to judgment as a matter of law on these claims.   The court determines that a genuine issue of material fact does exist as to Colbert's termination claims.  For these reasons, the court **grants in part** and **denies in part** Defendant's Motion for Partial Summary Judgment.  Colbert's denial of promotion claims are **dismissed with prejudice**, and his wrongful termination and FLSA claims will proceed to trial.

Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence, filed September 13, 2005, is **denied**.  If this case is not resolved at mediation, it is **set** for trial on **Monday, December 19, 2005, at 9:00 a.m.**  Pursuant to the court's orders of October 13, 2005 and November 3, 2005, ***all*** pretrial materials are due **December 5, 2005**.  Pretrial disclosures and objections are due **December 14, 2005**.  The pretrial conference in this action is scheduled for **Thursday, December 15, 2005**, **at 9:00 a.m**.

 **It is so ordered** this 29th day of November, 2005.

Sam A. Lindsay
United States District Judge